# FIRST NATIONAL BANK OF MONMOUTH
## v.
## JOHN C. DUNBAR, Adm'r, etc.

1. BANKS—SPECIAL DEPOSITS APPROPRIATED.—If a special deposit in a bank is wrongfully transferred by the bank or its cashier and put with the funds of the bank, and reported and treated by the bank as a part of its assets, this constitutes a conversion, and no demand and refusal is necessary to maintain trover.

2. EVIDENCE—PARTIES IN INTEREST—DIRECTORS.—In a suit brought by one suing as an administrator of a deceased person against a bank the testimony of the directors of the bank is incompetent, as they are parties in interest.

ERROR to the Circuit Court of Warren county; the Hon. A. A. SMITH, Judge, presiding. Opinion filed June 14, 1886.

Messrs. GRIER & DRYDEN and Messrs. KIRKPATRICK & ALEXANDER, for plaintiff in error.

Messrs. MATTHEWS & PEACOCK and Messrs. McKENZIE & CALKINS, for defendant in error.

BAKER, J. This action was for the recovery of the value of four Roseville township bonds, of the par value of one thousand dollars each, claimed to have been deposited for safe keeping with plaintiff in error by the intestate of defendant in error. The first and second counts in the declaration were in case, for the loss of the bonds through negligence; and the third count was in trover, for the wrongful conversion of the bonds. The finding of the jury was for defendant in error on the third count specifically and only, and was therefore a virtual finding for plaintiff in error on the first and second counts. Judgment was rendered on the verdict for $4,200 damages and for costs.

Does the evidence show that Byers, defendant in error's intestate, ever deposited any bonds with the bank? And does

it otherwise sufficiently sustain the verdict? When Oakley, the bank examiner, took possession of the bank and its property, on the 8th day of April, 1884, he found among its assets six Roseville township bonds, of the denomination of $1,000 each, of the issue of 1881. It does not appear from the testimony, otherwise than as here often suggested, when, where or from whom these six bonds, or any of them, were procured; and they were not mentioned in any entry upon the books of the bank, or in any report made by it, as a part of the assets of the bank prior to the report to the comptroller of October 2, 1883. The evidence shows that March 17, 1882, Byers gave to Hubbard, the cashier of the bank, his check on the bank for $3,950, which was on that day paid by the bank out of moneys he had on deposit there, and charged up against him on the books of the bank, in the body of which check it was stated, in the handwriting of the cashier, that it was for four Roseville township bonds of $1,000 each; and also that on the same day a receipt was given by the cashier to Byers for four bonds of Roseville township of $1,000 each, in which it was expressed that they were received "for safe keeping in our vault." In the pass book of Byers with the bank there appears, in the handwriting of the cashier, a credit of the date of June 4, 1883, of $240 for "bond interest;" this would be the amount of the interest coupons that fell due on June first on four of these bonds, and it appears that the intestate did not have or claim to have any bonds other than these in the bank. A conversation between the deceased and one Curry was given in evidence by plaintiff in error, which was to the effect that he, the deceased, had never seen the bonds, but that the cashier had bought them for him. The documentary evidence of defendant in error was supplemented by the testimony of Hubbard, the defaulting cashier of the bank, whose statements were in entire conformity with and in corroboration of the truth of that which appears upon the face of the check, receipt, bank book and pass book. It is urged, however, that there were but thirteen of these bonds issued ; that six of them belonged to the bank, and the whereabouts of the others were accounted for on the

trial, and that therefore it is impossible that Byers could have deposited four of them with the bank on the 17th of March, 1882. This is assuming as an established fact that the bank had and owned six of these bonds at that date, whereas the evidence does not show that the bank either had or claimed them prior to the time of the report of the date of October 2, 1883.

We think that from the evidence the jury were justified in believing that the cashier bought the bonds on or prior to the 17th of March, 1882, for Byers, that they were paid for by the check, and left on special deposit in the bank; that the interest coupons were collected by the bank for and credited to Byers; and that afterward, and prior to the 2d of October, 1883, the cashier, for the purpose of covering up to some extent his embezzlement of the bank funds, abstracted these bonds from the special deposit envelope in which they had been placed along with other papers, and transferred them to the funds of the bank and incorporated them as a part of its assets. Even if it had affirmatively appeared that the bank owned these six bonds prior to the transaction between Byers and Hubbard, yet the jury would have been justified in finding for defendant in error; for Hubbard was the cashier of the bank, and its agent with whom third parties were to deal, and had a right to sell and dispose of its choses in action and other personal property. It is urged that the only reasonable explanation of the transaction is that Byers gave his check to Hubbard, intending to make him his agent to purchase bonds for him, and that instead of doing so, Hubbard, after giving the receipt, drew and used the funds himself. This theory is inconsistent with the papers that were signed at the time, and the jury did not arrive at the conclusion suggested from the evidence that was before them, and we can not say the conclusion they reached was not the more reasonable one.

We think there is no merit in the point that no demand for the bonds was made until after the bank examiner had taken possession of them, and it was beyond the power of the bank to comply with such demand. If the special deposit was wrongfully transferred by the bank or its cashier, and put

with the funds of the bank, and reported and treated by the bank as a part of its assets, then this was a conversion, and no demand and refusal was necessary in order to maintain trover. But if the bonds should be regarded as a special deposit, notwithstanding such transfer, yet the bank, although it had failed and its property was in the hands of the federal authorities, had the right and power, under section 5228 of the Revised Statutes of the United States, "to deliver special deposits."

Errors are assigned in reference to some of the rulings of the court upon the trial, and upon the instructions.

The point is made that defendant in error was permitted to put two or three leading questions to Hubbard, over the objections of plaintiff in error. The objections were general, and it does not appear they were as to matter of form, or placed upon the ground the questions were leading, and it is plain from the record that they did not elicit categorical, or even satisfactory answers; and besides this, trial courts must be allowed to exercise a large discretion in the matter of leading questions. The objections to the questions propounded to Guy Stapp were properly sustained; the answers called for were with reference to matters that were *res inter alios acta*, and would have been but secondary evidence, even as to such transactions between other parties. There was no error in holding that the testimony of the directors of the bank was incompetent evidence. They were all stockholders and parties in interest, and defendant in error was suing as the administrator of a deceased person. Although Hubbard may have been the agent of Byers in the purchase of the bonds, yet that would not have the effect to render them competent to testify to the matters it was proposed they should, under the second exception of section two of the Evidence and Depositions Act; it was not proposed to examine them with reference to any conversation or transaction that took place between Hubbard (such agent) and the bank, or even with reference to the conversation or transaction that transpired between Hubbard and Byers. The questions put to Stapp and Young, on cross-examination, were in respect only to the is-

sues formed on the first and second counts of the declaration, and had reference solely to the alleged negligence of plaintiff in error ; and as those issues were found in its favor by the jury, no harm was done.

The refused instructions asked by plaintiff in error also were relevant only to the two counts upon which the jury failed to find a verdict for plaintiff in error, and the same remark may be made in reference to the two instructions that were modified by the court. It is therefore deemed unnecessary to consider the rulings made by the court thereon.

The first instruction for defendant in error was limited to the count in trover, and as applied to that count, it was substantially correct. Although some of the unnecessary statements therein were rather too broadly expressed, yet the substance of it was, that if the bank received the bonds for safe keeping, it was bound to return them upon demand; otherwise defendant in error would recover in trover, unless some good excuse was shown by the evidence for non-delivery.

The third and fourth instructions contained the propositions that the true and legal owner of personal property is never divested of his title by the unauthorized, wrongful act of any other person, and that the person who buys stolen property, acquires no title as against the true owner. The court evidently did not bear in mind that the property involved in this litigation consisted of bonds payable to bearer, and transferable by delivery, and that they were commercial paper. The rule stated as above by the court in these instructions has no application to such paper, at least when it has passed into the hands of a purchaser for value, without notice. The statement in the third instruction was perhaps sufficiently qualified by the language that followed, but there was no such qualification to the fourth. However, the instructions must be considered from the standpoint of the facts of the particular case on trial. Hubbard was the cashier of the bank, from the date of the purchase of the bonds by Byers to the day the bank closed ; and although he may have been the agent of Byers in making the original purchase, yet such agency ended when that purchase was closed, and in the matter of the

special deposit he was the agent of the bank, and notice to him that the bonds were held as a special deposit and for safe keeping, and were the property of Byers, was notice to the bank of the same facts. The evidence is undisputed that Hubbard, as cashier and agent for the bank, procured for it all six of the bonds, and if four of the bonds so procured were the bonds of Byers, then, howsoever they were procured, whether by purchase or otherwise, Hubbard, in such transaction, had notice of the ownership and title of Byers, and through him, its cashier and agent, the bank had the same notice he had, and could not possibly have been an innocent purchaser or holder of the bonds. It is a well settled doctrine of the law that notice to the agent is notice to the principal. We think that in the light of the evidence the incorrect statements of the law contained in these instructions could not have misled the jury to the detriment of plaintiff in error.

We see no valid objection to the fifth instruction; it merely left it to the jury to decide in regard to the credibility of the witnesses and the truthfulness of the several and various statements made by them.

We may remark that the instructions as a series were carelessly and inaccurately drawn, but that we are unable to see that they could have worked an injury. The salient points to establish the case of the plaintiff below were the facts that a special deposit was made as claimed, and that without the knowledge or consent of the depositor, the subject-matter of such deposit was transferred to the general funds of the bank and converted to its use. These points were fully and explicitly covered by the instructions given, and must affirmatively have been found by the jury. It is immaterial, then, that as to some of the matters of detail the instructions were not technically correct.

Those that were given at the instance of plaintiff in error presented the law of the case to the jury as fully and as favorably as could in reason be asked.

We find in the record no error that should reverse the judgment, and think that it should be affirmed; and it is so ordered.

Affirmed.